UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAYER2 COMMUNICATIONS INC, | No. C-13-02131 DMR |
| Plaintiff(s), | **ORDER RE: MOTION TO DISQUALIFY COUNSEL [DOCKET NO. 45]; MOTION TO SEAL [DOCKET NO. 48]; MOTION TO STRIKE [DOCKET NO. 50]; MOTION TO STAY [DOCKET NO. 54]; MOTION TO SEAL [DOCKET NO. 60]** |
| v. | |
| FLEXERA SOFTWARE LLC, | |
| Defendant(s). | |

Before the court is a motion by Defendant Flexera Software LLC ("Flexera") to disqualify counsel for Plaintiff Layer2 Communications Inc. ("Layer2").[1] [Docket No. 45.] A hearing on the disqualification motion was held on May 22, 2014. For the reasons stated below and at the hearing, the disqualification motion is **denied**.

## I. BACKGROUND

**A. Factual Allegations in the Complaint**

Layer2 provides internet and other services. Compl. [Docket No. 1] at ¶ 6. On June 9, 2010, Layer2 and Flexera entered into a contract wherein Layer2 agreed to provide internet and network

---

[1] Also before the court are several related motions: Flexera's motion to seal exhibits to its disqualification motion [Docket No. 48], Layer2's motion to strike or seal portions of the disqualification motion [Docket No. 50], Flexera's motion to stay the case pending the outcome of the disqualification motion [Docket No. 54], and Layer2's motion to seal portions of its opposition to the disqualification motion [Docket No. 60].

services to Flexera. Compl. at ¶¶ 6-7. Layer2 and Flexera amended the contract on June 4, 2011, for purposes not relevant to this motion. Compl. at ¶¶ 9-10. Flexera experienced chronic service problems with Layer2's service. Compl. at ¶¶ 17-28.

The contract provided a mechanism for Flexera, as the customer, to request service credits for network problems of certain durations and types. Compl. at ¶ 32. The service credit calculation accounted for the amount of network downtime per month, whether all or only a portion of network circuits were unavailable, and whether the network availability was due to "on-net"[2] or "off-net" issues. Compl. at ¶¶ 32-44. A provision in the contract permitted Flexera to terminate the contract with no additional obligations once it acquired a certain amount of service credits. Compl. at ¶ 45.

On March 22, 2013, Flexera informed Layer2 that it was seeking to terminate the contract because it had accumulated sufficient service credits. Compl. at ¶ 55. Layer2 disagreed. Compl. at ¶ 57. Nonetheless, Flexera did not make its next monthly payment. Compl. at ¶ 61. Layer2 alleges that this act breached the contract, and now brings a single cause of action for breach of contract against Flexera. Compl. at ¶¶ 66-71.

**B. Layer2 Hires Flexera Ex-Employee David Holloway**

On March 27, 2014, Flexera deposed David Holloway, who is a current Layer2 employee and an ex-Flexera employee.

Holloway worked for Flexera as a Senior Network Engineer between approximately September 2008 and May 2012. Nelson Decl. [Docket No. 48-4] Ex. D (Deposition of David Holloway) at 26:20-27:6. Holloway's primary duties were to design, implement, and troubleshoot Flexera's network. *Id.* at 27:5-9. As part of these duties, in February 2012, Holloway was tasked with calculating the service credits that Flexera was entitled to recover from Layer2 as a result of network downtime. *Id.* at 44:23- 49:10. The calculation was then forwarded to Layer2. Layer2 responded by claiming that the service credit calculation was incorrect. *Id.* at 49:11-21.

---

[2] The contract defines "on-net" as "all network components within the control of Reliance Globalcom," the underlying core service provider. Compl. at ¶¶ 12, 14. Anything not within the control of Reliance Globalcom is considered "off-net."

Holloway's supervisor, Joni Ferneau, then asked Holloway to speak with Flexera's in-house counsel, Marty Mellican, regarding the proper calculation of service credits. *Id.* at 51:8-55:17; Ferneau Decl. [Docket No. 46] at ¶ 3-4, Ex. A; Mellican Decl. [Docket No. 47] at ¶ 2-3. Ferneau states that she asked Holloway to speak with Mellican to get his legal advice about the proper interpretation of the contract regarding the calculation of service credits. Ferneau Decl. at ¶ 4. Mellican states: "Without disclosing any attorney-client privileged communications, I can affirm that the only reason that I ever spoke to Mr. Holloway, other than in passing, was to provide legal advice for the benefit of my client, Flexera." Mellican Decl. at ¶¶ 3-4. This was the only conversation Holloway had with the lawyers at Flexera. Holloway Dep. at 51:24-52:4.

At his deposition, Holloway went into greater detail about his February 2012 conversation with Mellican. Flexera's attorney cautioned Holloway not to "tell[] [him] the specifics," but nonetheless inquired about the purpose of Holloway's conversation with Mellican, the people present during the conversation, whether Holloway had shared the substance of the conversation with anyone at Layer2, and whether Holloway was aiding Mellican in his analysis of the contract between Flexera and Layer2. Holloway Dep. at 51:8-54:21. Flexera's attorney also elicited some of the content of the conversation:

> Q: What was the purpose of talking to the lawyer?
> A: I was asked to go down, from Joni, to talk about what on-net—to see if the SLAs [service credits] were correct from Layer2.
> . . .
> Q: What do you mean, the SLAs are correct from Layer2? Which—SLAs are you talking about?
> A: Most likely it—it was in regards to the SLA in this exhibit. They wanted me to verify if it was the correct SLA, that we had done the correct formula. I went and talked to legal, to Marty, and he had questions. He wanted to know what the difference between off-net and on-net was. I explained to him what it was. I actually did a drawing and put it onto the board.

Holloway Dep. at 53:14-18, 54:22-55:12.

Flexera terminated Holloway in approximately May 2012. Holloway Dep. at 26:6-27:2; 34:12-13. On December 3, 2012, Flexera filed criminal charges against Holloway related to theft of IT equipment, and Holloway subsequently pled guilty. *See* Holloway Dep. at 26:8-13; Greeson Decl. [Docket No. 60-4] Ex. 7 (Holloway Decl.) at ¶¶ 4-5.

In December 2013, after this lawsuit was filed, Layer2 hired Holloway as a Network Engineer.[3] *Id.* at 10:11-13, 12:18-19. Flexera expresses doubt about the true purpose of Holloway's employment with Layer2, noting that (1) Layer2 is located in Texas but Holloway works from his home out of state, *id.* at 17:20-18:10; (2) Holloway arguably was vague when providing deposition testimony about his tasks and duties at Layer2, *id.* at 12:18-15:17; and (3) Layer2's attorney asserted Holloway's Fifth Amendment rights instead of permitting Holloway to answer certain questions about his employment with Layer2. *See id.* at 20:3-8, 23:4-10.

The law firm of Archer Norris represents Layer2 in this action. Flexera contends that Archer Norris also represents Holloway, based on the fact that at Holloway's deposition, when Flexera asked Holloway if he had communicated his privileged discussion with Flexera's in-house counsel to anyone at Layer2 or with Layer2's attorneys, the Archer Norris attorney objected on the grounds of attorney-client privilege and instructed Holloway not to answer. Holloway Dep. at 52-17-53:1. Archer Norris contends that it represented Holloway at his deposition only insofar as he is an employee of Archer Norris' client, Layer2.

Flexera believes that Holloway has told attorneys at Archer Norris about the conversation he had with Flexera in-house counsel Mellican in 2012. Flexera bases this belief on Layer2's recent interest in deposing Mellican, who had not been disclosed by either party as a potential witness and whose name was not in any of the documents produced by either party. Nelson Decl. at ¶ 3. Layer2 contacted Flexera about scheduling Mellican's deposition on March 11, 2014, prior to Holloway's March 27, 2014 deposition. Nelson Decl. at ¶ 2.

## II. RELATED MOTIONS

Flexera now moves to disqualify Archer Norris. Before the court resolves the disqualification motion, it will first consider the parties' various motions relating to the treatment of purportedly confidential information contained in the briefing on the disqualification motion.

**A. Flexera's Motion to Seal [Docket No. 48] and Layer2's Motion to Strike [Docket No. 50]**

---

[3] Flexera contends that Layer2 knew of Holloway's conviction when it hired him, but the portion of the record cited shows only that Layer2's COO Leslye Beck "knows that he's been convicted of a felony," without any indication of when Beck acquired that knowledge. *See* Holloway Dep. at 26:6-10.

1       Flexera has moved pursuant to Civil Local Rule 79-5(e) to file under seal three exhibits to its
2  disqualification motion that Layer2 had designated as "Confidential." *See* Flexera's Mot. to Seal
3  [Docket No. 48]. They are Exhibit C (portions of deposition transcript of Beck), Exhibit D (portions
4  of deposition transcript of Holloway), and Exhibit E (a contract between Flexera and Layer2). *See*
5  Nelson Decl. Exs. C, D, and E.

6       Flexera moved to seal these documents solely because Layer2 designated them as
7  confidential. Flexera itself disputes whether any of these materials are actually confidential. *See*
8  Flexera's Mot. to Seal at 2. Flexera states:

> While Flexera is required to file this motion under the Protective Order, it disputes Layer2's designation of this deposition testimony under the Protective Order [as "Confidential"], and contends that Layer2 will be unable to support the sealing of these documents under the standards of Federal Rule of Civil Procedure 26(c) . . . . Flexera requests that the Court enter an Order determining that Exhibits C, D, and E . . . do not qualify for sealing under Federal Rule of Civil Procedure 26(c), and authorizing Flexera to file the exhibits in the public record pursuant to Civil Local Rule 79-5(e)(2).

*Id.* In fact, Flexera did not move to file any portion of its disqualification motion under seal, although the motion included the key excerpts from Exhibit D, the Holloway deposition.

       Pursuant to Civil Local Rule 79-5(e), a party must file under seal a document designated as confidential by the opposing party or a document containing information so designated by an opposing party. "Within 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable." Civ. L.R. 79-5(e)(1). "Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civ. L.R. 79-5(d)(1)(A). "If the Designating Party does not file a responsive declaration as required by subsection 79-5(e)(1) and the Administrative Motion to File Under Seal is denied, the Submitting Party may file the document in the public record no earlier than 4 days, and no later than 10 days, after the motion is denied." Civ. L.R. 79-5(e)(2).

       Layer2 did not file a response to Flexera's motion to seal, as required by Civil Local Rule 79-5(e)(1). Instead, Layer2 filed a motion seeking to strike or seal portions Flexera's

5

disqualification motion that refer to information contained in the three exhibits filed under seal.[4] *See* Docket No. 50. The court construes this as Layer2's attempt to provide "a declaration . . . establishing that all of the designated material is sealable," per Civil Local Rule 79-5(e)(1).

Layer2 offers little rationale for why the material in question is sealable other than the fact that Layer2 designated the material as confidential. That rationale is insufficient. Civ. L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable."). Layer2 also asserts that the designated information "invades the right of privacy of Layer2's employees and involves personal, private, and ongoing legal affairs that have no bearing on the main issues," *see* Greeson Mot. to Strike Decl. [Docket No. 51] at ¶ 12, but this vague description fails to illuminate which portions of the confidential documents invade the rights of which employees, and how. To the extent that Layer2 wishes to protect information about Holloway's guilty plea, that information is already in the public domain and Layer2 has failed to persuade the court that it should be filed under seal.

However, to the extent that Holloway's deposition transcript contains information about his home address, birthdate and salary, it may be redacted. Such information typically is entitled to privacy, particularly where as here, it is not relevant to the case. *See, e.g.*, *Leeder v. Sec'y of Def.*, No. C10-01822 HRL, 2012 WL 2309169 at *1 (N.D. Cal. June 18, 2012) (irrelevant personal information such as Social Security numbers and dates of birth may be redacted). Aside from these specific redactions to Exhibit D, the three exhibits must be filed in the public record. Accordingly, Flexera's motion to seal is granted in part and denied in part, and Layer2's motion to strike or seal is denied. Flexera shall file the unredacted versions of Exhibits C and E and the redacted version of Exhibit D by June 12, 2014.

**B. Layer2's Motion to Seal [Docket No. 60]**

---

[4] Flexera also adamantly opposed Layer2's motion to strike, noting that "[N]one of the information in Flexera's Motion even borders on confidential—most of it is either already in the public domain, concerns Flexera's business, or is basic information that could not be considered confidential under any legal principles." Flexera Opp. to Mot. to Strike [Docket No. 53] at 2.

Layer2 moves to seal portions of its opposition to the disqualification motion which contain information about Holloway's criminal record. For the same reasons stated above, Layer2 has failed to establish that this information is sealable.

With respect to Exhibits 1-6 and portions of Exhibit 7 to the Greeson declaration, the only reason Layer2 has offered in support of sealing is that the "referenced documents contain information that is properly designated Confidential or Highly Confidential in accord with the terms of the parties' Stipulated Protective Order and qualifies for sealing under Federal Rule of Civil Procedure Rule 26(c), and pursuant to Civil Local Rules 7-11 and 79-5." Docket No. 60 at 2. Again, a bare recitation that the documents sought to be sealed have been designated confidential is insufficient to establish that the documents are sealable. Layer2's motion to seal is denied. Layer2 shall file the unredacted documents by June 12, 2014.

## III. DISQUALIFICATION MOTION

Flexera moves to disqualify Archer Norris on two grounds: (1) Archer Norris' "representation" of Holloway and its representation of Layer2 presents a conflict of interest pursuant to California Rule of Professional Conduct ("CRPC") 3-310(C)(2); and (2) Archer Norris behaved unethically by acquiring confidential information through Holloway that belongs to Flexera. While these are presented as separate arguments, they involve overlapping principles and analyses which the court will cross-reference as needed.

**A. Legal Standards for Disqualification**

"A district court has the inherent authority to disqualify counsel." *Gotham City Online, LLC v. Art.com, Inc.*, No. C 14-00991 JSW, 2014 WL 1025120 at *2 (N.D. Cal. Mar. 13, 2014) (citing *United States v. Wunsch,* 84 F.3d 1110, 1114 (9th Cir. 1996)). Lawyers who appear before this court are required to comply with the CRPC. *See* Civ. L.R. 11-4(a)(1) (requiring that all members of the bar of this Court and attorneys permitted to practice before the Court pro hac vice must be "familiar and comply with the standards of professional conduct required of members of the State Bar of California"). In order to determine whether to disqualify counsel, the Court applies California law. *Gotham City*, 2014 WL 1025120 at *2 (citing *In re County of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000)); *Hitachi, Ltd. v. Tatung Co.,* 419 F.Supp.2d 1158, 1160 (N.D.Cal. 2006)).

"A court should examine a motion to disqualify counsel carefully 'to ensure that literalism does not deny the parties substantial justice.'" *Gotham City*, 2014 WL 1025120 at *2 (citing *People ex rel Dept. of Corporations v. Speedee Oil Change Systems, Inc.,* 20 Cal.4th 1135, 1144 (1999)). Thus, a court must balance such varied interests as a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that "tactical abuse underlies the disqualification motion." *Id.* (citing *Speedee Oil*, 20 Cal.4th at 1145). "An order of disqualification of counsel is a drastic measure, which courts should hesitate to impose except in circumstances of absolute necessity." *In re Marvel,* 251 B.R. 869, 871 (N.D. Cal. 2000) (citing *Schiessle v. Stephens,* 717 F.2d 417 (7th Cir. 1983)). The moving party, therefore, carries a heavy burden and must satisfy a high standard of proof. *Gotham City*, 2014 WL 1025120 at *3 ("Motions for disqualification are often tactically motivated and they tend to derail the efficient progress of litigation.") (citing *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). "To be justified, a motion to disqualify must be based on present concerns and not concerns which are merely anticipatory and speculative." *In re Marvel*, 251 B.R. at 871 (citing *In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361 (9th Cir. 1981)); *DCH Health Servs. Corp. v. Waite*, 95 Cal. App. 4th 829, 833, 115 Cal. Rptr. 2d 847, 850 (2002) (speculative contentions are insufficient to justify disqualification of counsel). "Because of the potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." *Gotham City*, 2014 WL 1025120 at *3 (citing *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.,* 760 F.2d 1045, 1049 (9th Cir. 1985)).

**B. Disqualification Pursuant to CRPC 3-310(C)(2)**

Flexera argues that Archer Norris represents both Layer2 and Holloway, and that such representation creates an irreconcilable conflict between its duty to Layer2 (i.e., to advocate on Layer2's behalf) and its duty to Holloway (i.e., not to permit Holloway to disclose attorney-client privileged information he learned during his employment at Flexera such that it advantages Layer2 in this litigation). Therefore, Flexera contends, Archer Norris must be disqualified pursuant to CRPC 3-310(C)(2), which requires attorneys not to "continue representation of more than one client in a matter in which the interest of the clients actually conflict . . . ."

This convoluted argument requires several conditions to be true.  First, the court must find that Holloway's conversation with Mellican in February 2012 is a "confidential communication between a client and lawyer" subject to the attorney-client privilege, and that the privilege has not been waived.  Second, the court must find that Holloway owes a duty to keep the confidences of its former employer Flexera confidential, and that Archer Norris, by representing Holloway, also owes a duty to ensure that Holloway does not disclose confidences that Holloway was required to keep confidential.

Because the court finds that these conditions are not met, it determines that disqualification of Archer Norris pursuant to CRPC 3-310(C) is inappropriate.

### 1. Confidentiality of February 2012 Communication Between Holloway and Mellican

#### a. Attorney-Client Privilege Under California Law

Both parties agree that in diversity jurisdiction cases such as this one, the court follows state law regarding privileges.  Fed. R. Evid. 501; *Kandel v. Brother Intern. Corp.*, 683 F.Supp.2d 1076, 1081 (C.D. Cal. 2010).  In addition, the choice of law provision in the contract specifies that California law applies.  Nelson Decl. [Docket No. 48-4] Ex. E (2010 contract) at ¶ 16.

Under California law, "evidentiary privileges such as the attorney-client privilege are governed by statute." *HLC Props. Ltd. v. Superior Court*, 35 Cal. 4th 54, 59 (2005).  The attorney-client privilege is codified at California Evidence Code § 950 et seq., and in general allows the client to "refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ."  Cal Evid. Code. § 954.  Section 952 defines the information that falls within this privilege:

> "Confidential communication between client and lawyer" means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

The party claiming the attorney-client privilege shoulders the burden of showing that the evidence it seeks to suppress falls within this definition. *HLC Props.*, 35 Cal. 4th at 59.  Once that showing has been made, the burden passes to the party opposing the assertion of privilege to show that the

9

1  "claimed privilege does not apply or that an exception exists or that there has been an expressed or
2  implied waiver." *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 123-24,
3  68 Cal.Rptr.2d 844 (1997).

4  The right of a person to claim the attorney-client privilege "is waived with respect to a
5  communication protected by the privilege if any holder of the privilege, without coercion, has
6  disclosed a significant part of the communication or has consented to disclosure made by anyone."
7  Cal. Evid. Code § 912. "Consent to disclosure is manifested by any statement or other conduct of
8  the holder of the privilege indicating consent to the disclosure, including failure to claim the
9  privilege in any proceeding in which the holder has the legal standing and opportunity to claim the
10 privilege." *Id.*

### b. Application of Attorney-Client Privilege to February 2012 Communication

The court finds that the February 2012 discussion between Holloway and Mellican is a "confidential communication between a client and lawyer" because the purpose of the conversation was for Holloway to provide Mellican with information relevant to the contract so that Mellican could provide Flexera his legal opinion regarding the proper interpretation of the contract provisions regarding service credits.

### c. Flexera's Subsequent Waiver of Attorney-Client Privilege

Even though the February 2012 discussion was a confidential communication between a client and lawyer, Flexera waived its ability to assert the attorney-client privilege over this communication when Flexera failed to designate Holloway's deposition excerpts as confidential and also filed a disqualification motion that publicly disclosed a significant part of the content of the communication.

During the deposition, Flexera's attorney apparently recognized that Holloway had disclosed privileged information through his testimony, for he then asserted the privilege at the deposition. *See* Holloway Dep. at 55:13-17 (Flexera counsel moves to strike Holloway's testimony about his conversation with Mellican "on the grounds . . . [of] attorney-client privilege[]"). Thus, the fact that Flexera's counsel elicited the testimony from Holloway did not necessarily waive the attorney-client privilege.

However, Flexera's actions since the deposition amount to a waiver. First, Flexera vigorously opposed Layer2's designation of the Holloway transcript as confidential, and requested that the court grant Flexera permission to publicly file the key excerpts from the Holloway transcript. Second, Flexera included the relevant excerpts of the Holloway deposition in its publicly filed disqualification motion, and argued that Holloway's testimony was not confidential. In other words, Flexera hinges its arguments for the disqualification of Archer Norris on the confidentiality of the very information that it has fought to publicly broadcast. This contradictory position is untenable.

Flexera offers several arguments against waiver, each of which fail to persuade the court. First, Flexera contends that designating the Holloway deposition transcript as confidential for sealing purposes would have been meaningless because it would not have prevented Layer2's counsel from seeing the sealed information. This misses the point. California law is clear that "failure to claim the privilege *in any proceeding in which the holder has the legal standing and opportunity to claim the privilege*" is a consent to disclosure that waives Flexera's right to claim the privilege. Cal. Evid. Code § 912(a) (emphasis added); *see also Calvert v. State Bar*, 54 Cal.3d 765 (1991) (failing to unequivocally assert attorney-client privilege in a proceeding in which the holder of the privilege has the standing and opportunity to assert it constitutes waiver) (citing Cal. Evid. Code § 912); Cal. Evid. Code § 952 (confidential information must not be disclosed to "third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information"). By broadcasting on the public record what it claims to be confidential information, Flexera has waived any assertion of privilege it could have made over this information.

Second, Flexera argues that the information disclosed does not constitute a "significant part of the communication," as required for waiver to occur pursuant to Section 912, because it does not include the content of Holloway's discussions with Mellican. The court disagrees. "What constitutes a significant part of the communication is a matter of judicial interpretation . . . ." *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal.App.3d 1047, 1052, 233 Cal.Rptr. 825, 828 (1987). "[A] disclosure by a client that he has made a communication to his lawyer about a

11

particular subject is not a disclosure of a significant part of the *content* of such communication, which is the disclosure required for a waiver of the privilege under Evid. Code, § 912." *S. Cal. Gas Co. v. Pub. Utilities Com.*, 50 Cal. 3d 31, 49, 784 P.2d 1373, 1384 (1990) (emphasis in original). Here, Holloway testified to the purpose of his meeting with Mellican, the specific topics discussed (i.e., Holloway's understanding of the difference between on-net and off-net), the content of some of the information that Holloway offered, and also Mellican's opinion that Holloway would be a poor witness in the event that Flexera had to sue Layer2. Even Flexera's attorney recognized that Holloway's testimony had veered from disclosing the mere fact that a conversation with Mellican had occurred to disclosing the content of that conversation, because he stopped Holloway at that point and moved to strike Holloway's preceding testimony "on the grounds that I believe that would be an attorney-client privileged communication." Holloway Dep. at 55:13-15.[5]

The court therefore finds that by publishing the information disclosed by Holloway during his deposition, Flexera has waived its right to assert attorney client privilege over it. Flexera's argument for disqualification under CRPC 3-310(c) is that a conflict of interest results from Archer Norris' representation of Layer2 and Holloway, because Archer Norris' duty to zealously represent Layer2 conflicts with its duty to prevent Holloway from disclosing Flexera's privileged information. Because the privilege has been waived as to that information, this argument falls apart.

**2. Archer Norris' Duty to Prevent Holloway From Disclosing Flexera's Confidences**

Even if Flexera had not waived its right to assert the attorney-client privilege, disqualification of Archer Norris under CRPC 3-310(c) would nonetheless be inappropriate because California law does not impose upon Archer Norris a duty to prevent Holloway from disclosing Flexera's confidences.

---

[5] The court's holding here that Flexera has disclosed "a significant part" of the communication between Mellican and Holloway, for purposes of determining whether Flexera has waived its assertion of attorney client privilege over that communication pursuant to Cal. Evid. Code § 912, is a separate analysis from determining the scope of that waiver. *See Transamerica*, 188 Cal. App. 3d at 1052 ("What constitutes a significant part of the communication is a matter of judicial interpretation; however, the scope of the waiver should be determined primarily by reference to the purpose of the privilege . . . . The scope of [the] waiver is narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver."). Because the scope of the waiver is not at issue in this disqualification motion, the court declines to reach a ruling on it at this time.

Flexera argues that Holloway, as an ex-employee of Flexera, owes a duty to Flexera to keep its confidences. Flexera also contends that Archer Norris, acting as Holloway's counsel, owes a derivative duty to prevent Holloway from disclosing Flexera's confidences.

The primary case on which Flexera relies to support these arguments is *Packard Bell NEC, Inc. v. Aztech Systems LTD*, No. CV 98-7395 DT(EX), 2001 WL 880957 (C.D. Cal. Jan. 22, 2001). *Packard Bell* can be distinguished from the circumstances at hand because there the ex-employee who disclosed the confidential information of his former corporation was a senior level employee who owed a *fiduciary duty* to his former corporation not to disclose its confidences. In *Packard Bell*, the plaintiff moved to disqualify a law firm that separately represented both plaintiff's ex-senior management employee (who had not subsequently become an employee of the defendant, as Holloway did here) and the defendant. 2001 WL 880957 at *8. The court granted the motion to disqualify, holding that the ex-employee was a senior officer who had a fiduciary obligation to keep plaintiff's privileged information confidential, and that the law firm was an agent of the ex-employee and therefore owed plaintiff the same fiduciary duties to not disclose or use the plaintiff's confidential information to assist the defendant. *Id.* The *Packard Bell* court cited no authority directly on point for its conclusion that the law firm owed the same fiduciary duties to plaintiff as its client, and noted that the circumstances were "a square peg which does not fit into the round holes of the rules most commonly applied in attorney disqualification cases." *Id.* at *9.

The only other case Flexera cites for the proposition that an attorney is obligated to maintain the confidences that a current client obtained from a former employer also involves a former corporate officer's fiduciary duties to its former corporation, but with a further distinction: the former corporate officer was also a lawyer for the former corporation, who then represented a party who brought suit against his former corporation. In *Huston v. Imperial Credit Commercial Mortgage Inv. Corp*, the plaintiff's attorney was disqualified because not only had he been a managing director and senior vice president of the defendant corporation, but he had also given the defendant legal advice during the defendant's initial public offering, which was the subject of the current lawsuit. 179 F.Supp.2d 1157 (C.D. Cal. 2001). The attorney had also entered into a consultant agreement with defendant in which the attorney agreed to protect the defendant's

13

confidential information. The court disqualified the attorney due to the fact that his "heightened fiduciary duty . . . because of his role as an officer of [defendant]" obligated him not to use the defendant's confidential information to benefit the defendant's opponent. *Id.* at 1177-78. Then, citing *Packard Bell*, the court also disqualified the attorney's co-counsel because, as the attorney's "agent," the co-counsel owed defendant the same fiduciary duty. *Id.* at 1179-80. *Huston* relies solely on *Packard Bell* for its conclusion that the attorney's co-counsel owed the same fiduciary duty as the attorney, but *Packard Bell*, as discussed above, cited no authority directly on point for that proposition.

Unlike in *Packard Bell* and *Huston*, which involved confidential information in the hands of *former officers* of the party seeking disqualification, there is no basis for finding that Holloway, simply by virtue of his prior employment with Flexera as an engineer, had a fiduciary duty to Flexera to maintain Flexera's confidences.

In addition, the *Packard Bell* and *Huston* opinions appear to be at odds with published California cases similar to the case at hand, in which attorneys were not disqualified despite receiving the opposing party's privileged information from their clients or from people employed by their clients. *See, e.g.*, *Maruman Integrated Circuits, Inc. v. Consortium Co.*, 166 Cal.App.3d 443, 212 Cal.Rptr. 497 (1985) (declining to disqualify defendant's counsel, who had obtained plaintiff's attorney-client confidential information from ex-employee of plaintiff who began working for defendant after the lawsuit was filed); *Fox Searchlight Pictures, Inc. v. Paladino,* 89 Cal.App.4th 294, 106 Cal.Rptr.2d 906 (2001) (denying disqualification of attorney representing Paladino, a former attorney for Fox, in her employment discrimination action even though Paladino provided her attorney with ostensibly privileged information from Fox that she learned during her employment). In fact, these cases hold that a party or an employee of the party is *entitled* to disclose to the party's attorney all facts relevant to the lawsuit, including an ex-employer's confidential and privileged communications. *See Maruman*, 166 Cal.App.3d at 448 ("A client should be encouraged to reveal to his attorney all possible pertinent information. A client should not fear that confidences conveyed to his attorney in one action will return to haunt him in a later one.") (citation and quotation marks omitted); *Fox Searchlight Pictures*, 89 Cal.App.4th 294 at 300-02.

14

In summary, because Archer Norris does not have a duty under California law to prevent Holloway from disclosing Flexera's confidential information, Flexera fails to establish that a conflict of interest exists between Archer Norris' representation of Layer2 and of Holloway. The disqualification motion, insofar as it is premised on CRPC 3-310(C), is denied.[6]

**C. Disqualification For Use of Confidential Information**

Flexera offers a second reason for disqualifying Archer Norris: it argues that Archer Norris acquired Flexera's confidential information from Holloway prior to Holloway's deposition; that Archer Norris had an ethical obligation to respect the confidentiality of that information; that Archer Norris failed to meet this obligation; and that as a result, Archer Norris should be disqualified.

This argument is problematic for the many of same reasons discussed above. California courts have refused to disqualify counsel in situations similar to this one, where counsel learns confidential information from a source originally associated with an opposing party. *See, e.g.*, *Maruman*, 166 Cal.App.3d at 443; *Fox Searchlight*, 89 Cal.App.4th at 294. Flexera makes no attempt to discuss or distinguish these cases. Instead, Flexera relies on cases in which an attorney is disqualified for using the opposing party's attorney-client privileged documents when the opposing party inadvertently disclosed them to the attorney.[7] It is not clear that the *State Fund* standard

---

[6] Because the court finds that there is no conflict of interest, it need not reach the issue of whether Flexera, having never been a client o f Archer Norris, has standing to bring a motion to disqualify Archer Norris. *See Civil Service Com. v. Superior Court*, 163 Cal.App.3d 70, 76-77, 209 Cal.Rptr. 70 (1984) ("Ordinarily, motions to disqualify counsel due to a conflict of interest under CRPC 3-310(C) are bought by one of the two clients represented by one attorney"); *but see William H. Raley Co. v. Superior Court*, 149 Cal. App. 3d 1042, 1047, 197 Cal. Rptr. 232 (Ct. App. 1983) (upon motion of defendant, who had not been represented by plaintiff's attorneys' law firm, disqualifying the law firm because one of its partners was a director of a bank who managed a trust owning 100% of defendant's common stock).

[7] Those cases hold that "[w]hen a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege . . . and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged." *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656-57, 82 Cal. Rptr. 2d 799 (1999). Failure to do so, e.g., by using that information to depose the opposing party's witnesses, could result in disqualification. *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 171 P.3d 1092 (2007) (disqualifying plaintiffs' attorney who inadvertently received defendants' attorney work product and used it in deposition of opposing party's expert); *Clark v. Superior Court*, 196 Cal. App. 4th 37, 125 Cal. Rptr. 3d 361 (2011) (disqualifying plaintiff's attorney who failed to return and extensively reviewed attorney-client privileged documents of opposing counsel provided by plaintiff, an ex-employee of

1  applies in the present circumstances, where Layer2 allegedly received Flexera's confidential
2  information not through the opposing counsel's inadvertent disclosure of documents, but through
3  communications with one of its own employees. In such circumstances, California authority "has
4  consistently concluded that a party cannot improperly disclose confidential information to one's own
5  counsel in the prosecution of one's own lawsuit. To do otherwise (i.e., barring discussions of an
6  adversary's confidences known to the client), would defeat the purpose of confidentiality, which is
7  to promote full and open discussions between attorney and client." *Neal v. Health Net, Inc.*, 100
8  Cal. App. 4th 831, 843-44, 123 Cal. Rptr. 2d 202 (2002) (reversing trial court's disqualification of
9  plaintiff's attorney); *see also Fox Searchlight*, 89 Cal.App.4th at 302-315 (315 ("[F]undamental
10 fairness requires the plaintiff be allowed to make a limited disclosure of her former [employer's]
11 ostensibly confidential information to her own attorneys for purposes of preparing and prosecuting a
12 wrongful termination suit against the former [employer].").

13      This principle has been upheld even in cases where the individual disclosing the information
14 was not the attorney's client but an employee of the attorney's client. For example, in *Maruman*,
15 where the plaintiff's ex-employee disclosed obviously attorney-client privileged information to
16 defendant's counsel after getting hired by defendant, the court held that "[a] client should be
17 encouraged to reveal to his attorney all possible pertinent information. A client should not fear that
18 confidences conveyed to his attorney in one action will return to haunt him in a later one."
19 *Maruman*, 166 Cal.App.3d at 448 (citation and quotation marks omitted). "Client confidences can
20 be protected from unwarranted public disclosure by less drastic measures such as: protective orders,
21 limiting the admission of evidence; in camera proceedings; the use of sealed records . . . ." *Neal*,
22 100 Cal.App.4th at 844.

23      In addition, "there is no applicable legal standard that supports disqualification" of one
24 party's attorney as a sanction for the disclosure by an ex-employee of the opposing party of the
25 opposing party's confidential information. *Neal*, 100 Cal. App. 4th at 843 (summarizing cases).

---

28 defendant who had signed a non-disclosure agreement while employed by defendant).

California "authorities have consistently concluded that disqualification is inappropriate for mere exposure to information by an attorney to confidential information." *Id.*

For all of the reasons stated above, Flexera's motion to disqualify Archer Norris on the basis of Archer Norris' receipt and use of Flexera's confidential information is denied.

### IV. CONCLUSION

For the foregoing reasons, the disqualification motion is **denied.** Flexera's motion to seal [Docket No. 48] is **granted in part and denied in part**, Layer2's motion to strike or seal [Docket No. 50] is **denied**, and Layer2's motion to seal [Docket No. 60] is **denied.** By **June 12, 2014**, Layer2 shall file the unredacted documents, and Flexera shall file the unredacted versions of Exhibits C and E and the redacted version of Exhibit D.

Because the court denies the disqualification motion, Flexera's motion to stay pending the determination of the disqualification motion [Docket No. 54] is **denied** as moot.

IT IS SO ORDERED.

Dated: June 5, 2014



DONNA M. RYU
United States Magistrate Judge